14 F.3d 598
 73 A.F.T.R.2d 94-725
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie Syvalius WALSTON, Defendant-Appellant.
 No. 92-5197.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 29, 1993.
Decided Dec. 29, 1993.
 
 Sara Ellen Kopecki, BHT Legal, for appellant.
 Harvey Lee Bryant, III, Asst. U.S. Atty., for appellee.
 Kenneth E. Melson, U.S. Atty., for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL, PHILLIPS, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Syvalius Walston appeals his conviction on a single count of conspiring to defraud the United States Treasury, in violation of 18 U.S.C. Sec. 371. We find no error, and we affirm.
 
 
 2
 * Walston established Sani-Vac in 1982 to perform janitorial and ground maintenance services at government installations. In late 1982, the company's vice-president, Ray Williams, reported that the contracting officer at Little Creek Amphibious Base in Norfolk, Virginia, wanted $800 every two weeks in return for favorable treatment with regard to Sani-Vac's contract. Walston, Williams, and Herbert Reid, Sani-Vac's manager for the Little Creek contract, decided to issue a $800 bonus check to Reid every two weeks and to then funnel this amount to the official.
 
 
 3
 The scheme soon expanded, and the company officers began to channel the money to their own uses. Suspecting that the biweekly bonus checks might arouse the suspicion of "the auditor," the officers devised new methods of diverting funds and covering their tracks. Reid's nephew and juvenile daughter were put on the payroll as salaried employees at $600 apiece every two weeks, and each stayed on the payroll for about three years. Except for one summer that Reid's daughter worked for the company, these two "ghost employees" performed no services for Sani-Vac.
 
 
 4
 Walston, Williams and Reid directed the company bookkeepers to enter the ghost employees on the payroll ledger, and Walston and Williams signed the "payroll" checks. In the years leading up to the indictment, the ghost employee scheme included more than twelve fictitious or former employees.
 
 
 5
 The money found its way back to the company's officers in a variety of ways. For instance, Reid opened an account under the name of Tidewater Distributing Company, deposited checks written to ghost employees, and then wrote checks on this account to Walston and Williams. Some "payroll checks" were written to pay off personal loans from former employees to Williams and Walston.
 
 
 6
 An I.R.S. agent testified that such a scheme would "definitely" impede her in performing a tax audit of a company.
 
 
 7
 On November 12, 1991, Watson was charged in a single count indictment with conspiring "to defraud the United States by impeding, impairing, obstructing and defeating the lawful functions of the Department of the Treasury in the collection of ... income taxes." Williams and Reid had cooperated with the government and were not indicted. After a bench trial, Walston was found guilty and sentenced to three years imprisonment.
 
 II
 
 8
 The statute of conviction, 18 U.S.C. Sec. 371, provides as follows:
 
 
 9
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 
 
 10
 If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
 
 
 11
 Thus, the statute proscribes two types of conspiracies: (1) conspiracy to commit a substantive offense proscribed by another statute (the "offense clause"), which, depending on the substantive offense, may be either a felony or a misdemeanor; and (2) conspiracy to defraud the United States (the "defraud clause"), which is a felony. The "offense clause" requires reference to another part of the criminal code. This case involves a prosecution under the "defraud clause" of what is commonly referred to as a Klein conspiracy.[1] The offense of conviction is self-contained in Sec. 371, and no reference to any other section of the criminal code is necessary. See United States v. Vogt, 910 F.2d 1184, 1200-01 (4th Cir.1990), cert. denied, 498 U.S. 1083 (1991).
 
 
 12
 The indictment refers to "defraud[ing] the United States" and makes no reference to any other statute. Walston contends that the government cannot charge under the "defraud clause" if the conspiracy alleged had as its object an offense or offenses that are specifically proscribed elsewhere in the code. Walston's argument relies on the opinion in United States v. Minarik, 875 F.2d 1186 (6th Cir.1989). According to Walston, Minarik holds that if the object(s) of the alleged Sec. 371 conspiracy can be shoehorned into any other section(s) of the criminal code, then the defendant must be charged under the "offense clause" with reference to such other section(s). He argues further that the object of the conspiracy with which he was charged was only a misdemeanor and, therefore, he should have been subject to only a misdemeanor sentence.
 
 
 13
 Walston contends that the evidence demonstrates that the objects of the conspiracy could only relate to one or more of three criminal statutes in the I.R.S. code--26 U.S.C. Sec. 7201 (willful attempt to evade tax, a felony), Sec. 7203 (willful failure to file return, supply information, or pay tax, a misdemeanor), and Sec. 7207 (willful delivery of fraudulent returns, statements, or other documents, a misdemeanor). He eliminates the sole felony possibility as follows: (1) an element of conspiracy to violate Sec. 7201 is an intent to cause a deficiency in one's tax payments, but (2) the government adduced no evidence that Walston either caused or intended to cause such a tax deficiency. Therefore, one of the other (misdemeanor) sections applies, and the government should not be permitted to transmute the crime into a felony by an end run around the "offense clause."
 
 
 14
 In United States v. Arch Trading Co., 987 F.2d 1087, 1091 (4th Cir.1993), we noted that "the two prongs ofSec. 371 are not mutually exclusive [and] Sec. 371's two clauses overlap considerably." Arch Trading involved a Sec. 371 conviction under the "offense clause." The defendant in that case argued that the allegedly illegal object of the conspiracy--violation of an executive order--was not an "offense against the United States" and, therefore, it could only be charged under the "defraud clause." We held, however,"that when Congress provides criminal sanctions for violations of executive orders that it empowers the President to issue, such violation constitutes an 'offense' for the purposes of 18 U.S.C. Sec. 371." Id. In discussing whether the defendant could also have been convicted under the "defraud clause," we noted that the evidence would have supported a conviction under either clause. "In cases ... where the defense will not be unfairly burdened by the invocation of either clause, the prosecution may frame the indictment at its discretion." Id. at 1092. Arch Trading is dispositive, and we hold that it was not error to proceed against Walston under the felony "defraud clause" of Sec. 371.
 
 
 15
 A post-Minarik case from the Sixth Circuit supports our decision. In United States v. Sturman, 951 F.2d 1466 (6th Cir.1991), cert. denied, 112 S.Ct. 2964 (1992), the defendant was convicted under the "defraud clause" of Sec. 371. He argued that the conduct underlying the conspiracy charge constituted violations of either of two sections of the Tax Code and, therefore, he should only have been charged under the "offense clause" of Sec. 371. The appeals court disagreed.
 
 
 16
 The conspiracy alleged and proven here was broader than a violation of a specific statute.... This large conspiracy involved many events which were intended to make the IRS impotent. No provision of the Tax Code covers the totality and scope of the conspiracy. This was not a conspiracy to violate specific provisions of the Tax Code but one to prevent the IRS from ever being able to enforce the Code against the defendants. Only the defraud clause can adequately cover all the nuances of a conspiracy of the magnitude this case addresses.
 
 
 17
 Id. at 1473. See United States v. Hurley, 957 F.2d 1, 3-4 (1st Cir.) (noting that the conspiracy in Minarik "had a narrow object ... and arose from a single event ..."), cert. denied, 113 S.Ct. 60 (1992).
 
 
 18
 Walston's conspiracy is similarly broad. The conspiracy began in 1982 and was initially focused on the bribery of a government official. From this relatively modest beginning, the scheme continued for another four years and came to involve thousands of dollars paid to the conspirators but entered on the company's books as having been paid to fictitious workers. This money was then funneled to Walston and his coconspirators. Company records were kept in a manner calculated to mislead I.R.S. auditors in the event of an investigation. The overall scheme is broader than discrete violations of the two misdemeanor provisions in the Tax Code cited by Walston.
 
 
 19
 In Arch Trading, we emphasized the breadth of the defraud clause as follows:
 
 
 20
 "To conspire to defraud the United States means to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official actions and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention."
 
 
 21
 Arch Trading, 987 F.2d at 1091-92 (quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924)). Under the facts of this case, the government had ample latitude to proceed under the defraud clause.[2]
 
 AFFIRMED
 
 
 [1]
 A Klein conspiracy is one to defraud the government in its tax assessment and collection functions by the concealment of business income. United States v. Klein, 247 F.2d 908 (2d Cir.1957), cert. denied, 355 U.S. 924 (1958)
 
 
 [2]
 Walston's alternative argument is that he was prejudiced in his defense by what he calls the "shifting ... of the conspiratorial focus ..." Appellant's brief at 18. Our review of the record convinces us that the government's theory of the case remained focused on the conspiratorial objective set forth in the indictment, i.e. to impede the I.R.S. in its taxcollection function